**Brenda ROE and Anna Doe, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**Eloise ANDERSON, Director of the California Department of Social Services; California Department of Social Services; Pete Wilson, Governor of the State of California; Craig Brown, Director of the California Department of Finance, Defendants.**

**No. CIV–S–97–0529 DFL.**

United States District Court, E.D. California.

June 4, 1997.

---

3.  The Crisps have made no allegations of wrongdoing against the purchaser.

Jordon C. Budd, ACLU Foundation, San Diego and Imperial Counties, San Diego, CA, David S. Schwartz, Mark D. Rosenbaum, ACLU Foundation of Southern California, Los Angeles, CA, Martha F. Davis, NOW Legal Defense and Education Fund, New York City, for Plaintiffs.

Theodore Garelis, Office of Attorney General, Sacramento, CA, for Defendants.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

This case again presents the question of the constitutionality of a one-year durational residency requirement for full welfare benefits. A California statute, enacted in 1992, provides that "families that have resided in this state for less than 12 months" and who qualify for welfare shall receive benefits no greater than the "maximum aid payment that would have been received by that family from the state of prior residence." Cal.Welf. & Inst.Code § 11450.03.[1] Under this provision, California residents who have migrated to California from states that provide a lower level of benefits than California would receive that lower level of benefits through the first year of their residency in California. The State first sought to implement this residency limitation in 1992. At that time, the court found that such a distinction among California residents, based on the duration of their residency, was unconstitutional under a line of Supreme Court cases addressing durational residency provisions in a variety of contexts. *See Green v. Anderson,* 811 F.Supp. 516 (E.D.Cal.1993), *aff'd,* 26 F.3d 95 (9th Cir.1994), *vacated as unripe sub nom, Anderson v. Green,* 513 U.S. 557, 115 S.Ct. 1059,. 130 L.Ed.2d 1050 (1995). Because the

---

1. Section 11450.03 of the Welfare and Institutions Code provides:

   (a) Notwithstanding the maximum aid payments specified in paragraph (1) of subdivision (a) of Section 11450, families that have resided in this state for less than 12 months shall be paid an amount calculated in accordance with paragraph (1) of subdivision (a) of Section 11450, not to exceed the maximum aid payment that would have been received by that family from the state of prior residence.

   (b) This section shall not become operative until the date of approval by the United States Secretary of Health and Human Services necessary to implement the provisions of this section so as to ensure the continued compliance of the state plan for the following:

   (1) Title IV of the federal Social Security Act (Subchapter 4 (commencing with Section 601) of Chapter 7 of Title 42 of the United States Code.)

   (2) Title IX [sic] of the federal Social Security Act (Subchapter 19 (commencing with section 1396) of Chapter 7 of Title 42 of the United States Code.)

controlling legal principles and precedents have remained unchanged, the court reaches the same conclusion and again finds that § 11450.03 makes an unconstitutional distinction between California residents based on the length of their residency.

## I.

Section 11450.03 was enacted in 1992 in conjunction with a California experimental work incentive project under the Aid to Families with Dependent Children ("AFDC") program. Section 11450.03 is only effective upon approval by the Secretary of Health and Human Services. Approval was given by the Secretary, in the form of a waiver, in October 1992.[2] The court entered an injunction prohibiting implementation of § 11450.03 on January 28, 1993. *Green*, 811 F.Supp. at 523. Subsequently, in a parallel litigation that challenged the Secretary's grant of waivers needed for the California welfare experiment—including the waiver for the durational residency limitation—the Court of Appeals vacated the Secretary's waivers. *See Beno v. Shalala*, 30 F.3d 1057 (9th Cir. 1994). By its own terms, § 11450.03 then ceased to apply in the absence of approval by the Secretary. Accordingly, having granted California's petition for certiorari in *Green v. Anderson*, the Supreme Court found that the constitutionality of § 11450.03 no longer presented a justiciable controversy. *Anderson*

*v. Green*, 513 U.S. 557, 558–60, 115 S.Ct. 1059, 1060, 130 L.Ed.2d 1050 (1995).

In February 1996, the Secretary again granted the necessary waivers for the California welfare experiment with the exception of the waiver permitting the State to distinguish between old and new residents. The Secretary expressly declined to renew this waiver,[3] and without the waiver § 11450.03 was a dead letter. There the matter stood until August 1996 when Congress enacted a new federal welfare law, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), 42 U.S.C. §§ 601, et seq. The PRWORA significantly increased the states' discretion to design their federally supported welfare plans without seeking waivers from the Secretary. The Act superseded the AFDC program with a new program entitled Temporary Assistance to Needy Families ("TANF").[4] The Act specifically authorized the states to apply a one-year durational residency requirement of the kind embodied in Cal.Welf. & Inst. Code § 11450.03. *See* 42 U.S.C. § 604(c).[5] In October 1996 the State of California submitted its TANF plan to the United States Department of Health and Human Services. The plan included a durational residency limitation consistent with California law and § 604(c). On February 28, 1997, in All-County Letter 97–11, the California Department of Social Services instructed the coun-

---

**2.** The waiver authority, dated October 29, 1992, states that the Secretary waives the requirements in 42 U.S.C. § 602(a) and "various provisions of the regulations at 45 CFR 233.20(a)(1) and (2)." Pls.' Ex. 2 at 9.

**3.** The Secretary's refusal to grant a waiver for a residency requirement reflected her view that a two-tier benefits system was unconstitutional. Plaintiffs in this action have submitted a copy of the Secretary's brief filed May 17, 1995, in *V.C. v. Whitburn*, Civil Action No. 94–C–1028, an action brought in the United States District Court for the Eastern District of Wisconsin. Schwartz Decl.Ex. A. The Wisconsin AFDC demonstration project at issue applied to four counties only, for the first six months of a new arrival's residency in those counties, and would pay AFDC benefits at the level of the new resident's state of prior residence whether or not that level was higher or lower than the otherwise applicable Wisconsin level AFDC benefits. In her brief, the Secretary

took the position that the Wisconsin project was unconstitutional under existing Supreme Court precedent. Nonetheless, the Secretary stated that she would continue the waiver previously granted to Wisconsin so that Supreme Court review would not be prevented as it had been in *Green*.

**4.** Although there has been a change of terminology in federal law, the State continues to refer to the relevant benefits for needy families as "AFDC" benefits.

**5.** The PRWORA provides:

A State operating a program funded under this part may apply to a family the rules (including benefit amounts) of the program funded under this part of another State if the family has moved to the State from the other State and has resided in the State for less than 12 months.

42 U.S.C. § 604(c) (Supp.1997).

ties to implement § 11450.03 as of April 1, 1997. Pls.' Ex. 3.

The implementation instructions in the All–County Letter explain that to be eligible for AFDC at the California computed grant amount, one member of the "assistance unit" must have resided in California for twelve consecutive months. *Id.* at 25. Thus, even if family members had lived in California all of their lives, but left the State "on January 29th, intending to reside in another state, and returned on April 15th," the family would receive AFDC at the level of the state of residence from January 29 to April 15, if that level were lower than the benefits that California would otherwise provide to the family. *Id.* at 30. Similarly, if "children from another state move in with an unaided caretaker relative who is a California resident," the level of benefits of the children's state of prior residence would determine their benefits for the first year of their residence in California.[6] *Id.* Nor would the birth of a newborn be treated differently because "neither the newborn nor any other member of the [assistance unit] has lived in California for 12 consecutive months." *Id.* at 32. In the computation examples, the instructions use a family of two—mother and one child—who move to California from Arizona. In California, region 1, the AFDC payment would be $456 a month compared to the Arizona payment of $275. Until the family has resided in California for twelve consecutive months, the family will receive AFDC benefits of $275. *Id.* at 33. And this lower amount will be the benefit level for the first year of residency whether or not the family actually was on welfare in the state of prior residence; the instructions note that "[i]t does not matter if a family was on aid in the former state." *Id.* at 30. On the other hand, the instructions explain that the residency requirement does not apply to families who have moved to California from another country because such countries would not have an AFDC program on which to base a comparison of benefit levels. Thus, a new state resident from one of the fifty states could receive a lower benefit than a new resident from a foreign country.

This action was filed on April 1, 1997, by plaintiffs Brenda Roe and Anna Doe. Brenda Roe was a resident of Oklahoma until early 1997. When her husband lost his job, the Roes decided to move to California to pursue employment. Ms. Roe was six months pregnant as of April 8, 1997. Ms. Roe states that because of complications that developed in her pregnancy after their move to California, Mr. Roe cannot leave her unattended and therefore cannot work. Ms. Roe was informed by the State social services office that she would be limited to the Oklahoma monthly grant level of $307 when she became eligible for AFDC at the six-month point of her pregnancy as compared to the California grant level of $565. According to Ms. Roe, the monthly rents in the community in which they now reside, Long Beach, California, are $300 for a studio apartment and $450 to $650 for a one-bedroom apartment. Ms. Roe avers that at the time she and her husband decided to move to California she did not know anything about AFDC or TANF and had never been on welfare.

Anna Doe recently moved to Los Angeles County from Washington, D.C. At the time of her move she was pregnant. She states that she came to California to look for a better job. According to her declaration, she obtained a job when she first arrived in California but later stopped working because she found the job too stressful. She has been living in a shelter. She became eligible for AFDC in April 1997 at the six-month point of her pregnancy. Under the two-tier system, her grant would be limited to $330 per month, the Washington, D.C. level as opposed to $456 per month, the California AFDC benefit for a single parent residing in Los Angeles County. According to Ms. Doe, the rents for apartments in her area range from $450 to $570 a month.

On April 1, 1997, a temporary restraining order was entered by the court enjoining

---

6. The instructions suggest that the unaided caretaker relative might be able to avoid this outcome by requesting aid for him or herself, thus creating a new assistance unit to which the children could be added. *See id.* at 31.

implementation of § 11450.03 [7] The parties stipulated that the temporary restraining order would remain in effect until resolution of plaintiffs' motion for preliminary injunction. On April 23, 1997, on the stipulation of the parties, the court permitted the action to be maintained as a class action and certified a class of plaintiffs defined as "all present and future AFDC and TANF applicants and recipients who have applied or will apply for AFDC or TANF on or after April 1, 1997, and who will be denied full California AFDC or TANF benefits because they have not resided in California for twelve consecutive months immediately preceding their application for aid." Plaintiffs now move for a preliminary injunction prohibiting defendants from implementing the durational residency requirement in § 11450.03.[8]

## II.

Plaintiffs make a number of factual contentions about the effect of § 11450.03 and the characteristics of the population of new residents that are relevant to their motion. As to the effect of § 11450.03, plaintiffs' exhibits demonstrate that the disparity between the California level and the level of the other forty-nine states will vary a good deal depending on the state of prior residence. For example, a four-member family in Los Angeles would receive a monthly AFDC benefit of $673, but if the family recently moved from Mississippi—which provides the lowest benefit level for a family of four of all of the states—the monthly benefit would be limited to $144. The cost of living in the various states may also affect a comparison of the relative benefit levels. According to the declaration of Robert Greenstein,[9] filed by plaintiffs, when housing costs are factored in, California benefit payments rank 18th in the nation. Greenstein Decl. ¶ 28; tbl. 1. Thus, although in absolute terms California benefit levels rank as the sixth highest grant level in the United States, see id. ¶ 29, Mr. Greenstein concludes that "[b]ecause California's housing costs are high relative to most states and because welfare families in California are less likely than welfare families in any other state[ ] to live in subsidized housing, the residency requirement will place many recently arrived welfare families on an inferior footing relative to welfare families in the state from which the newcomers moved."[10] Id. ¶ 29.

Finally, on the question of the disparity between the AFDC grants of new and old California residents, plaintiffs offer that the disparity likely will increase under the PRWORA. The new welfare legislation permits the states to use federal funds for purposes other than cash assistance, such as to create new programs or to provide assistance

7. The temporary restraining order was issued by the Honorable Lawrence K. Karlton. Judge Karlton also granted plaintiffs' motion to proceed under fictitious names.

8. On April 15, 1997, the court certified to the United States Attorney General that plaintiffs in this action have drawn into question the constitutionality of § 404(c) of Title IV of the Social Security Act as added by § 103 of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), Pub.L. No. 104–193, 110 Stat. 2214 and codified at 42 U.S.C. § 604(c). The United States was permitted the opportunity to file an amicus brief but did not do so nor did it seek to intervene. Defendants' contention that the United States is an indispensable party is without merit. Section 604(c) permits, but does not require, the states to include a durational residency requirement in their state plans. The durational residency provision challenged here is imposed by State, not federal, law. See Shapiro v. Thompson, 394 U.S. 618, 641, 89 S.Ct. 1322, 1335, 22 L.Ed.2d 600 (1969) (finding that a federal provision prohibiting Secretary from approving a state welfare plan that included a residency requirement of more than one year not at issue in challenge brought against state residency requirements).

9. Mr. Greenstein is Executive Director of the Center on Budget and Policy Priorities in Washington, D.C., and is the past administrator of the federal Food and Nutrition Service. Greenstein Decl. ¶¶ 1, 2.

10. According to plaintiffs' expert:

In all but two of the 45 states (including the District of Columbia as a state) in which welfare benefits are lower than in California, the average statewide costs of modest housing also are lower than in California. This means that newly entered residents from 43 of these 45 states typically will face higher costs of living, but they will not receive welfare benefits that reflect or adjust for those higher costs.... In fact, there are 15 states in which the maximum AFDC benefit for a family [of] three was less than half the Fair Market Rent for even a one-bedroom apartment in California.
Id. ¶¶ 29, 30.

not in the form of a cash grant. Thus, states may reduce their cash grants, while increasing other services, but it would be the lower cash grant that California would look to in calculating benefits for the first year of residency in California. Furthermore, because the new federal law eliminates the requirement that the states maintain a single statewide system, plaintiffs predict that in some of the states benefit levels may vary from county to county, increasing the possible variation and disparity.[11]

As to the characteristics of the population of new residents, plaintiffs make the case that persons do not move from state to state to seek higher AFDC benefits. According to the declaration of Professor Joel F. Handler,[12] the "welfare magnet" hypothesis is incorrect. Indeed, Professor Handler suggests that "non-AFDC-eligible people were more likely to move to higher benefit states than AFDC-eligible people ...—exactly the opposite of the correlation that would be predicted by a 'welfare magnet' effect."[13] Handler Decl. ¶ 10. Professor Handler also states "that less than half of the AFDC-eligible population that moved to a higher-benefit state actually went on welfare within the first two years of their move." Id. Plaintiffs also submit the declaration Professor

John Hartman.[14] Professor Hartman undertakes a review of the relevant statistical studies and performs his own analysis of the data he considers most reliable. Professor Hartman concludes that "welfare benefits appear to exert *no impact* on the residential choices made by poor people. And, when the indigent relocate, they have *no greater propensity* to consume welfare benefits than the poor who are already within a state's borders."[15] Hartman Decl. ¶ 49 (emphasis in original).

Although not taking direct issue with most of plaintiffs' factual contentions, defendants provide a number of qualifications. On the question of disparity in benefits, defendants note that the lower benefit level that new residents experience may be offset in part by supplementary benefit programs, such as homeless assistance, that California provides to the needy without respect to the length of their residency. In addition, new residents would receive full Medicaid benefits and food stamps and in fact would receive an additional dollar of food stamp benefits for every three dollars of reduction in their AFDC grant. Wagstaff Decl. ¶ 8. Notwithstanding these additional ameliorating facts, defendants do not disagree with plaintiffs' contention that there will be disparities, even significant disparities, among California AFDC

11. Plaintiffs also contend that the lack of uniformity under the new welfare law will make monitoring other states' programs untenable and will lead to mistakes. *See id.* ¶¶ 17–22.

12. Professor Handler is the Richard C. Maxwell Professor of Law at UCLA Law School and UCLA School of Public Policy and Social Research. Handler Decl. ¶ 1.

13. As to the welfare magnet hypothesis, Professor Handler states:

An important study (Levine and Zimmerman, 1996) of the alleged "welfare magnet" hypothesis found a distinct absence of empirical support for the proposition that AFDC recipients tend to move from lower to higher benefit states, or to remain in higher benefit states.... The study found that only 3.8 percent of the AFDC-eligible population moved from one state to another, and only 1.8 percent moved from a state offering lower to a state offer[ing] higher AFDC benefits. In contrast, out of AFDC non-eligible people, 6.8 percent moved to a different state, 3.4 percent from a lower to a higher benefit state.
*Id.* ¶ 10.

14. Professor Hartman is an Assistant Professor of Sociology at Columbia University who specializes in social science statistics. Hartman Decl. ¶ 1.

15. Plaintiffs also offer Mr. Greenstein's opinion that many families "move with no expectation of receiving welfare benefits." Greenstein Decl. ¶ 6. Mr. Greenstein bases this opinion on data showing that less than half, 42 percent, of recently arrived California AFDC recipients, for whom there is data, had received welfare benefits in the state of their former residence. *Id.*

Professor Hartman's finding that the poor who migrate to a state are no more likely to go on welfare than the poor who are longer term residents would be important were the court to apply the Privileges and Immunities Clause of Article IV, under the approach suggested by Justice O'Connor in her concurring opinion in *Zobel v. Williams*, 457 U.S. 55, 71–81, 102 S.Ct. 2309, 2323–24, 72 L.Ed.2d 672 (1982) (O'Connor, J., concurring). Under this approach, the constitutionality of a provision depends in part on whether non-citizens "constitute a peculiar source of the evil at which the statute is aimed." *Id.* at 76, 102 S.Ct. at 2321 (citation omitted).

recipients as between newcomers and recipients who have resided in the state for one year. Indeed, defendants could hardly argue otherwise given defendants' position that the overriding purpose of § 11450.03 is to limit California's welfare expenditures. Defs.' Opp. at 25.

On the question of the "welfare magnet" hypothesis, defendants submit no declarations but briefly discuss a study published by the Brookings Institution that concludes that the poor do move to states with higher benefit levels. This study is criticized by Professor Hartman and the critique is a telling one that goes unanswered. Although defendants do not concede that the "welfare magnet" hypothesis is invalid, it is apparent from their pleadings that defendants do not view the hypothesis as critical to the constitutionality of the residency requirement. Rather, defendants' argument is a straightforward one that does not depend on empirical support: the State of California spends an enormous sum of money each year on AFDC, some $2.9 billion; the State has the right and the duty to control the expense of the AFDC program in any way that it can; § 11450.03 by reducing the payments to new residents will save the State some $10.9 million in the 1997–1998 fiscal year and therefore is an appropriate exercise of State budgetary authority so long as the residency requirement does not amount to a penalty on migration under *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and the cases following *Shapiro.* The State defendants contend that § 11450.03 is not unconstitutional under *Shapiro* because new residents receive the same level of cash benefits as they would have received in the state of their prior residency.

### III.

■ In *Green v. Anderson,* 811 F.Supp. 516 (E.D.Cal.1993), the court previously reviewed the relevant Supreme Court case law and concluded that the two-tier system under § 11450.03 was unconstitutional. In a subsequent case presenting much the same issue, the Supreme Court of Minnesota reached the same conclusion as to a similar provision in Minnesota law. *See Mitchell v. Steffen,* 504 N.W.2d 198 (1993), *cert. denied,* 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994). There have been no developments in the case law that would question the analysis in *Green* or *Mitchell.*[16] The court will not repeat but now adopts its discussion in *Green* of the Supreme Court's right of migration and equal protection cases in which the Court set aside as unconstitutional distinctions drawn among residents of a state—all of whom are bona fide residents—based on the incipiency or duration of their residency. As the Supreme Court stated in *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 904, 106 S.Ct. 2317, 2321–22, 90 L.Ed.2d 899 (1986), the right of migration "protects residents of a State from being disadvantaged, or from being treated differently, simply because of the timing of their migration, from other similarly situated residents." The Supreme Court has found such distinctions invalid in the context of welfare benefits, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), nonemergency medical care, *Memorial Hosp. v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), the right to vote, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), rebates from state oil revenues, *Zobel v. Williams,* 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982), and veter-

---

**16.** In an article reviewing the case law concerning state distinctions based on the duration or onset of residency, Professor William Cohen of the Stanford Law School notes that as to the dispute presented in this case, the make up of the Supreme Court has changed since its last decision in *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) such that "[i]t is less than clear with whom the Supreme Court, as presently constituted, will agree." William Cohen, *Discrimination Against New State Citizens: An Update,* 11 Const. Commentary 73, 78 (1994). However accurate

this observation, it is not proper for a lower court to attempt to anticipate new developments or refinements in the Supreme Court's approach to an area based on a change in the make up of the Court. Professor Cohen also suggests that "[t]hese should be easy cases." *Id.* In Professor Cohen's view, under the Citizenship Clause of the Fourteenth Amendment, "it is unconstitutional to deny benefits to new citizens that are extended to other citizens similarly situated—subject only to reasonable assurances that claims of new residence are bona fide." *Id.* at 79.

an preferences, *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985) and *Attorney General of New York v. Soto–Lopez*, 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986). *See also Williams v. Vermont*, 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985) (tax credits). The Court has only upheld such distinctions where there was a genuine question as to whether the new residents were bona fide residents of the State, a concern that is not present in this case. *See Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (divorce); *Starns v. Malkerson*, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), *summarily aff'g*, 326 F.Supp. 234 (D.Minn.1970) (three-judge court) (in-state tuition).

The central analytical dispute here is whether the appropriate comparison is between new residents of California and the residents of their former states or between new residents and other longer term residents of California. The State defendants argue that so long as the benefit provided to new residents of California is the same as that provided to residents of their former states, there is no penalty on migration and no violation of equal protection.[17] Plaintiffs contend that the appropriate comparison is among California residents, some of whom are new arrivals and others of whom have been in the State for a longer period, and that no significant distinctions can be drawn among bona fide residents based on the length or onset of their residency in California.

The Supreme Court has resolved the question of which groups to compare. In case after case, the Court has determined that the appropriate comparison is among recent residents to California and other residents of California and not to residents of other states.[18] The Court explained in *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 623, 105 S.Ct. 2862, 2868–69, 86 L.Ed.2d 487 (1985), that "[t]he State may not favor established residents over new residents" and in *Soto–Lopez* that the State may not treat new residents differently, "because of the timing of their migration, from other similarly situated residents." *Soto–Lopez*, 476 U.S. at 904, 106 S.Ct. at 2322. Moreover, the decision in *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982), rests entirely on a comparison of new and older Alaska residents, each of whom received a bounty from oil revenues that no other state provided to its residents.

The court acknowledges that the states have broad latitude to design benefit programs. Moreover, both the Congress and the State of California, and several other states, consider that it is an appropriate cost saving measure to limit the benefits of new residents to those they would have received in the state of their prior residence. Facing a similar congressional permission in *Shapiro*, however, the Supreme Court held that "Congress may not authorize the States to violate the Equal Protection Clause." 394

**17.** There is a logical inconsistency between defendants' argument and the structure of § 11450.03. Unlike the two-tier Wisconsin project described in note 3 *supra*, § 11450.03 only provides the same benefit level as the state of prior residency if that level is below that of California. Thus, if the new resident comes from a state with a more generous benefit, the resident will not receive the same treatment as in the state of prior residents. At oral argument, counsel for defendants argued that it would make little sense for the State to ever pay more to new residents, than to longer term residents, since the whole purpose is to save money.

The State defendants do not contend that there is anything about welfare that uniquely would justify a distinction between old and new residents. At oral argument counsel acknowledged that under the defendants' analytical approach, any State service, benefit or, indeed, tax or other imposition, keyed to the level of the new resi-

dent's former state would be constitutional. Thus, for example, a state could assess new residents at the higher tax rate of the state of their former residence. *But cf. Zobel v. Williams*, 457 U.S. 55, 58 n. 2, 102 S.Ct. 2309, 2311 n. 2, 72 L.Ed.2d 672 (1982) (noting that the Alaska Supreme Court had set aside under the Alaska Constitution's equal protection clause a provision giving tax exemptions to residents based on the length of their residency in the State).

**18.** *See Mitchell v. Steffen*, 504 N.W.2d 198, 201–202 (1993) ("The United States Supreme Court has ruled that the comparison, in our case, is to be made between recent residents to Minnesota and other Minnesota residents, not between recent Minnesota residents and residents of other states. The Court has made this abundantly clear."), *cert. denied*, 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994).

U.S. at 641, 89 S.Ct. at 1335. In light of established Supreme Court precedent, the distinction drawn by § 11450.03 between new and old residents of California must be found unconstitutional.

## IV.

Plaintiffs demonstrate that they face the possibility of irreparable injury if the injunction is not issued.[19] Both of the named plaintiffs have been unable to locate housing in California that they could afford on the reduced grant. Others within the class may face lower benefit levels depending on the state of their prior residence. Although any disruption to a State program is of concern, the record as it now stands does not suggest that the State will be unduly harmed by the issuance of an injunction. The record does not support a finding that there will be an influx of poor persons to California because of California's benefit levels. Moreover, the State may save a comparable amount of money by a very minor reduction in the benefits paid to all AFDC recipients.[20]

Plaintiffs' motion for preliminary injunction is therefore granted. The court orders:

Pending judgment in this action, defendants and their agents, assignees, and successors in interest are enjoined from implementing: 1) Section 11450.03(a) of the California Welfare and Institutions Code; 2) regulations promulgated pursuant to § 11450.03(a) of the California Welfare and Institutions Code, including but not limited to M.P.P.E.A.S. § 89–110.4; and 3) All–County Letter ("ACL") 97–11 to the extent that the ACL denies standard California AFDC or TANF benefits to members of the plaintiff class or determines any AFDC or TANF benefits in whole or in part by reference to the AFDC or TANF grant of any other state or territory.

IT IS SO ORDERED.

---

**19.** A party requesting a preliminary injunction must show either a likelihood of success on the merits and the possibility of irreparable injury or that serious questions on the merits are presented and the balance of hardships tips sharply in the party's favor. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.,* 886 F.2d 1173, 1174 (9th Cir.1989). The court employs a sliding scale that takes account of the strength of plaintiff's showing on the merits and on injury.

**20.** At oral argument, plaintiffs' counsel stated that a reduction of some 36 cents a month would produce a yearly aggregate saving of $10 million.