# 99 DTA 206

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA-MAYAGUEZ**
**PANEL I**

GLORIA VILLANUEVA VEGA
Recurrente

v.

DEPARTAMENTO DE LA FAMILIA,
HON. CARMEN L. RODRIGUEZ DE RIVERA
Recurrida

Núm. KLRA-99-00025

San Juan, Puerto Rico, a 10 de junio de 1999

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

López Vilanova, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Gloria Villanueva Vega solicita revisemos la Resolución dictada por la Junta Adjudicativa del Departamento de la Familia, el 12 de noviembre de 1998, en virtud de la cual se le declaró inelegible para participar del Programa de Ayuda Temporal para Familias Necesitadas (TANF).

Examinando el recurso y la Resolución de la Junta Adjudicativa, a la luz del Derecho aplicable, con el

beneficio de la comparecencia del Departamento de la Familia revocamos el dictamen recurrido.

## I

La recurrente Gloria Villanueva Vega era beneficiaria del Programa TANF bajo la categoría (C) --Asistencia a Familias con Niños Necesitados-- por el factor de incapacidad de la madre de los menores.

El 1 de julio de 1998, la Oficina Local de Aguada del Departamento de la Familia (en adelante Oficina Local) sometió el caso de la recurrente ante la consideración de la Junta Médico Social para que se evaluara nuevamente. Adujo que ésta trabajaba para el Municipio de Aguada bajo el Programa Volunteers in Service to America (en adelante VISTA) y devengaba un sueldo bruto quincenal de $327.94 desde el 22 de agosto de 1997.

La Junta Médico Social declaró inelegible a la aquí recurrente para participar del Programa TANF. La determinación se basó en que la recurrente estaba trabajando y que por ello no se puede considerar incapacitada.

La Oficina Local notificó dicho dictamen a la recurrente y ésta radicó apelación ante la Junta Adjudicativa del Departamento de la Familia (en adelante Junta Adjudicativa).

La Junta Adjudicativa concluyó que la recurrente no era elegible para participar del Programa TANF por el factor de incapacidad debido a que trabajaba y devengaba un sueldo mensual. Resolvió que la reglamentación vigente del Programa establece que si la persona que alega incapacidad realiza trabajo útil, esto es, que al evaluarse el mismo se determina que el trabajo no es esporádico y tiene valor monetario, aun a jornada parcial, será inelegible para ser considerado por el factor de incapacidad.

Solicitada oportuna reconsideración, la misma se declaró NO HA LUGAR.

Inconforme, Villanueva Vega recurre ante nos. Plantea que erró Junta Adjudicativa: (1) al declararla inelegible para recibir beneficios por incapacidad en ausencia de prueba médica que sustentara su decisión; (2) al decidir que la recurrente realizaba trabajo que pudiera ser considerado útil por ser remunerado; y (3) al no excluir los pagos realizados a la recurrente por su labor realizada bajo el Programa VISTA, de los ingresos a considerar para determinar elegibilidad para recibir los beneficios del Programa TANF.

Examinemos estos errores a la luz del ordenamiento vigente. La controversia es de primera impresión.

## II

Como parte de la reforma legislativa de asistencia económica presentada por el Presidente de los Estados Unidos en 1996, el Congreso eliminó el Programa Federal Aid to Families with Dependent Children (AFDC) y lo sustituyó por el Programa Temporary Assistance for Needy Families (TANF). En la misma fecha se creó la Ley de Reconciliación de Responsabilidad Personal y Oportunidad Laboral (PRWORA), Ley Pública 104-193 de 22 de agosto de 1996; 42 U.S.C.A. sec. 1305. Dicha ley sustituye el AFDC para establecer el Programa TANF. A los estados participantes de este programa, el gobierno federal asignaría unos fondos económicos requiriendo a dichos estados la preparación de un Plan Estatal. Dicho plan definiría la forma en que proveerían los nuevos servicios de asistencia económica, con sus propios requisitos de elegibilidad, bajo unas guías establecidos por el gobierno federal. Mary R. Mannix *et al., Implementation of the Temporary Assistance for Needy Families Block Grant: An Overview, Clearinghouse Review Journal of Poverty Law,* Vol. 30 Nos. 9-10, Jan. - Feb., 1997, Pág. 870 y ss.

Este plan tenía que ser aprobado por el gobierno federal antes de implantarse. Contrario al Programa AFDC, el Programa TANF tiene pocos requisitos federales y los estados tienen suficiente discreción para crear sus

propios programas con sus propios parámetros para recibir los beneficios. *Roe v. Anderson,* 966 F. Supp. 977 (1997).

El propósito de la ley PRWORA, *supra*, es terminar con la dependencia a largo plazo de familias necesitadas en beneficios gubernamentales promoviendo adiestramientos de trabajo, así como también, trabajos para permitir que éstas dejen el programa y logren su autosuficiencia económica. La ley PRWORA, *supra*, hizo dos cambios fundamentales al sistema del Welfare:

*"1. Eliminar su compromiso de 61 años de asistencia económica a madres y niños estableciendo un límite, por vida, de 5 años a los beneficios recibidos.*

*2. Requiere que los beneficiados del Welfare trabajen a cambio de sus beneficios."*

*Andrew S. Gruber, Promoting Long Term Self-Sufficiency for Welfare Recipients: Post- Secondary Education and Welfare Work Requirement,* Fall 1998, 93 NWULR 247, págs. 248-249.

En Puerto Rico, el Departamento de la Familia implantó dicho programa. Creó el Reglamento de Normas de Certificación para la Determinación de Elegibilidad a Solicitantes y Participantes del Programa de Ayuda Temporal para Familias Necesitadas (TANF) de la Administración de Desarrollo Socio-económico del Departamento de la Familia, Reglamento Núm. 5724, 25 de noviembre de 1997, (en adelante Reglamento), en el cual establece las reglas y parámetros para la implantación del TANF. El Artículo 1 del Reglamento, de conformidad con las disposiciones de la ley PRWORA, *supra*, consolida los Programas de Asistencia Económica, Asistencia de Emergencia y PASOS para establecer el Programa TANF. En su segundo Artículo, el Reglamento recoge el propósito del Programa TANF. El mismo va dirigido a proveer ayuda económica temporal a personas o familias solicitantes que no posean ingresos o recursos suficientes para sufragar sus necesidades básicas. La ayuda es temporal y va dirigido a terminar la dependencia en las ayudas gubernamentales promoviendo la preparación para el empleo, trabajo y matrimonio. Además, el Programa provee ayuda a familias necesitadas para cuido de niños, brinda ayuda económica y servicios a personas que por condiciones de edad, impedimentos físicos o mentales necesitan asistencia económica. También ofrece ayuda económica de emergencia que por situaciones imprevistas o por desastres naturales o circunstanciales sufren la pérdida del ingreso familiar o carecen del mismo y se ven afectados en su funcionamiento.

Como parte de sus objetivos, están el proveer ayuda económica adecuada a familias y a individuos mientras están trabajando para lograr su autosuficiencia, y coordinar y maximizar el uso de todos los recursos públicos, privados y de la comunidad para garantizar que los participantes obtengan y retengan un empleo adecuado y no regresen al ciclo de la depencia.

### III

En el caso ante nos, la recurrente tiene razón al señalar que erró la Junta Adjudicativa al declararla inelegible. No se presentó prueba médica que impugnara su incapacidad. Durante la revisión anual que realizó la Oficina Local del Departamento de la Familia en Aguadilla, el 8 de junio de 1998, la determinación de la Junta Médico Social declaró incapacitada a la recurrente, y se recomendó que continuara bajo tratamiento médico. (Apéndice V, pág. 14). Según el Reglamento, pág. 39 (VERIFICACION DEL FACTOR DE INCAPACIDAD FISICA O MENTAL DE UNO O AMBOS PADRES Y DETERMINACION DE ELEGIBILIDAD), el solicitante o participante presentará documentos debidamente certificados por un médico o psicólogo que evidencie su condición. La recurrente cumplió con este requisito. (Apéndice V, pág. 15).

El Departamento de la Familia sometió el caso de la recurrente ante la consideración de la Junta Médico

Social para que se evaluara nuevamente, a base de que ésta estaba trabajando bajo el Programa VISTA y que devengaba un sueldo.

La Junta Adjudicativa tomó su decisión a base de que el trabajo era uno útil y no esporádico, y la declaró inelegible para recibir la ayuda económica. No tomó la decisión a base de que las funciones de la recurrente no eran realizables por una persona incapacitada. De la resolución de la Junta no se desprende que se presentara prueba para impugnar la incapacidad de la recurrente. El informe del psiquiatra no indica que la recurrente no podía realizar funciones como atender llamadas telefónicas, hacer colectas para deambulantes y hacer censos. Entendemos que personas con cierto grado de incapacidad no estarían imposibilitadas de realizar dichas tareas.

## IV

Los señalamientos de error segundo y tercero plantean la controversia de si procedía o no quitarle los beneficios del TANF a la Sra. Villanueva Vega por su trabajo en el Programa VISTA. Veamos.

En el año 1973, el Congreso de Estados Unidos, como parte de su esfuerzo para eliminar la pobreza, creó una serie de programas de servicio voluntario doméstico, que incluia el Programa VISTA, bajo la Ley Domestic Volunteer Services, 42 U.S.C.A. sec. 4950 *et. seq.* La sección 4950 de la mencionada ley establece como política pública la importancia de trabajo voluntario a través de la historia de los Estados Unidos y su propósito de expandir el servicio voluntario en comunidades a través de la nación desarrollando actividades que ayuden a las personas necesitadas. El propósito del Programa VISTA es fortalecer los esfuerzos para eliminar y aliviar la pobreza y los problemas relacionados con la misma en los Estados Unidos. (Véase sección 4951 de la Ley). Su fin es fomentar que personas de todas las estratas sociales participen en servicios voluntarios y hagan una aportación significativa y constructiva a la sociedad utilizando el talento humano y la dedicación de tal manera que puedan contribuir a la solución del problema de la pobreza en la nación.

La sección 5044 (f)(1) de la ley es clara. Dispone que los pagos a voluntarios bajo VISTA no reducirá o eliminará el nivel de elegibildad para recibir o seguir recibiendo beneficios bajo cualquier programa gubernamental. En el historial legislativo de la Ley de Servicio Voluntario Doméstico de 1973, Ley Pública 93-113, 42 U.S.C.A. sec. 4951, recoge el interés de que se fomente el reclutamiento de voluntarios y se asegura de que sus pagos o beneficios no tendrán el efecto de reducir o eliminar el nivel de elegibilidad del participante o el de su familia para recibir asistencia o servicios bajo cualquier otro programa gubernamental a cualquier nivel gubernamental (estatal o federal).

La Exposición de Motivos de la Ley Pública 96-143, 42 U.S.C.A. sec. 5044, establece que el servicio voluntario provee un beneficio positivo tanto a los voluntarios como a la comunidad. Por lo tanto, voluntarios de bajos recursos y sus familias, mientras sirvan como voluntarios, deben continuar recibiendo los beneficios o la asistencia que recibían, o tendrían derecho a recibir, antes de convertirse en voluntarios.

Como vemos, la intención legislativa del estatuto que crea VISTA expone que el motivo de exigir que se excluyan los pagos de VISTA para efectos de elegibilidad, es fomentar que los ciudadanos realicen trabajo voluntario sin miedo a perder los beneficios de asistencia económica bajo programas de gobierno.

El Tribunal Supremo de New Jersey evaluó una controversia muy similar a los hechos que nos ocupan en el caso *Gilbert v. State, Dept. of Human Ser. Etc.,* 400 A.2d 803 (1979). Allí la División de Welfare de New Jersey puso fin a las ayudas económicas otorgadas a una persona por un programa estatal debido a que una ley estatal disponía que se consideraban los ingresos obtenidos por cualquier programa gubernamental al momento de computar la elegibilidad de las ayudas económicas a recibir. El Tribunal tuvo la oportunidad de evaluar la intención legislativa del Programa VISTA. Concluyó que ningún beneficiario debe verse afectado de recibir

asistencia económica del gobierno por estar realizando servicios voluntarios bajo el Programa VISTA. Fundamentó su conclusión en la intención legislativa del estatuto. ■ El informe del Senado No. 93-311 (Labor and Public Welfare Committee) dispone que: *"...low income VISTA community volunteers ... their VISTA allowances and stipends will not have the effect of reducing or eliminating their or their familie's level of eligibility for assistance, such as Medicaid, received under any other governmental program at any governmental level."* (Pág. 2181). Más adelante el informe senatorial establece: *"...in keeping with the volunteer concept of the program... as to... community low income volunteers in VISTA and VISTA-type programs, no support payments or services shall in any way affect the eligibilty for pension, Social Security, Medicare, Medicaid, Public Assistance, or other governmental benefits to which they are entitled."* (Pág. 2161). S.Rep. No.93-311, 93d Cong., 1st Sess, Reprinted in 1973, U.S. Code Cong. & Admin. News, pp. 2155, 2161, 2181.

El Reglamento aprobado por el Departamento de la Familia para implantar la legislación federal establece que: *"la persona que alega incapacidad y que realiza trabajo útil, que al evaluarse el mismo se determina que el trabajo no es esporádico y tiene valor monetario aun a jornada parcial, será inelegible para ser considerado por el factor de incapacidad."* Sin embargo, para declararle inelegible, es necesario evaluar bajo qué programa trabaja el participante. Ello así porque el Reglamento hace una exclusión expresa de no considerar el trabajo realizado bajo VISTA para efectos de la elegibilidad de ese participante. El Reglamento dispone claramente con respecto a la categoría (C) en la cual participa la recurrente, que los ingresos bajo el Programa VISTA no se incluirán al determinar la elegibilidad y los beneficios a los solicitantes y participantes del TANF.

El Departamento de la Familia realizó una interpretación fragmentada del Reglamento. Ello le llevó a una decisión errónea en lo que refiere a la cualificación de la recurrente.

Las reglas de hermenéutica establecen que: *"las leyes que se refieren a la misma materia o cuyo objeto sea el mismo deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos puede ser tomado para explicar lo que resulte dudoso en otro".* Artículo 18 del Código Civil, 31 L.P. R.A. sec. 18. Un estatuto debe ser interpretado en su conjunto y no por secciones aisladas. *Pueblo en interés del menor L.R.R.,* **89 J.T.S. 107** (1989); *A.R.P.E. v. Ozores Pérez, supra; Delgado v. D.S.C.A.,* 114 D.P.R. 177 (1983).

Para descubrir la intención del legislador, resulta conveniente recurrir al historial legislativo de la ley y considerar cuál fue el propósito social de la misma *"...puesto que el fin principal de la interpretación estatutaria es hacer que prevalezca el propósito legislativo y evitar interpretaciones que conduzcan a resultados irrazonables".* *Aulet v. Departamento de Servicios Sociales,* 129 D.P.R. 1 (1991).

Por ello, *"como norma básica, los tribunales tienen la obligación de exigir que la conclusión administrativa se apoye explícitamente en la razón y la ley y sea parte de un patrón integrado y razonable de reglamentación."* *South P.R. Sugar Co. v. Junta,* 82 D.P.R. 847, 864 (1961).

La participación de la recurrente en el Programa VISTA, por sí sólo, no la hace inelegible para recibir los beneficios de asistencia económica.

Con estos antecedentes, se expide el auto solicitado y se revoca el dictamen recurrido.

Notifíquese.

Así lo pronunció y manda el tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 99 DTA 206**

**1.** 42 U.S.C.A. sec. 5044 (f).