

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-27-2001

# Maldonado v. Houstoun

Precedential or Non-Precedential:

Docket 97-1893

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Maldonado v. Houstoun" (2001). *2001 Decisions.* Paper 139.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/139

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 27, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1893

EDWIN MALDONADO; MARIA DELORES MALDONADO,
individually and as next friends of Ana Maldonado, Pablo
Maldonado, Edwin Maldonado, Rey Maldonado, Y esenia
Maldonado, and Jose Maldonado, and on behalf of all
others similarly situated; MARIA ORTIZ; MICHAEL ORTIZ,
individually and as next friends of Julie Ortiz, Michael
Ortiz, and Angelica Ortiz, and on behalf of all other
similarly situated; KENSINGTON WELFARE RIGHTS
UNION; PHILADELPHIA WELFARE RIGHTS
ORGANIZATION, on behalf of themselves and their
members; TRAVELER'S AID SOCIETY OF PHILADELPHIA,
individually and on behalf of its clients

v.

FEATHER O. HOUSTOUN, Secretary of the
PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE;
DON JOSE STOVALL, Executive Director of the
PHILADELPHIA BOARD OF ASSISTANCE, both in their
official capacities,

Appellants

STAPLETON, ROSENN, Circuit Judges, and RESTANI,
Judge, United States Court of International T rade*

(Filed June 27, 2001)

_____

* The Honorable Jane A. Restani, Judge, United States Court of
International Trade, sitting by designation.

OPINION SUR MOTION for ATTORNEYS' FEES
and COSTS

ROSENN, Circuit Judge:

The determination of a reasonable attor ney's fee for a prevailing party under a fee shifting statute generally is a disagreeable and tedious task, especially wher e the fee petition is vigorously contested and the petition is in behalf of numerous lawyers who worked on the appeal. The fee motion before us claims over 550 hours of attor ney time expended exclusively for work on the appeal. W e are required to analyze the motion and supporting data to ascertain whether the amount claimed is reasonable. The motion is especially troublesome because in this single issue appeal, ten lawyers represented the plaintiffs and claim compensation for not only an aggregate of 550.13 hours of service on the appeal, but an additional claim of 25.68 hours for services expended on the fee petition. The total sum claimed is $100,996.40 in attorneys' fees and $648.74 in costs.

The plaintiffs, welfare recipients in Pennsylvania, brought a class action in 1997 in the United States District Court challenging the constitutionality of Pennsylvania's two-tier durational residency requirement limiting the amount of public assistance benefits for new residents. The plaintiffs claimed that the two-tier welfare scheme violated their constitutional rights to travel, to equal pr otection, and to non-discriminatory treatment under the Privileges and Immunities Clause. They moved for class certification and an injunction. The plaintiffs sued pursuant to 42 U.S.C. S 1983, naming the State Secretary of Public Welfare and the Executive Director of the Philadelphia Boar d of Assistance as defendants. The District Court held that the two-tier welfare scheme violated the Fourteenth Amendment Equal Protection Clause, granted the injunction, and certified the class action. On the basis of a stipulation of counsel, the District Court or dered the defendants to pay $248,000 for the plaintiffs' fees for services rendered in that court, and costs. The

2

Commonwealth appealed and, after briefing and oral argument, we affirmed. See Maldonado v. Houstoun, 157 F.3d 179 (3d Cir. 1998).

After our decision, the Supreme Court of the United States granted certiorari to review Roe v. Anderson, 134 F.3d 1400 (9th Cir. 1998), a decision which struck down similar provisions in a California statute.

Based on our decision and the decision of the United States Supreme Court in Saenz v. Roe, 526 U.S. 489 (1999) (affirming the judgment of the United States Court of Appeals for the Ninth Circuit in Roe v. Anderson, 134 F.3d 1400 (9th Cir. 1998)), we now have befor e us the plaintiffs' motion for attorneys' fees and costs in connection with their appeal to this court.

I.

The plaintiffs (appellees) claim that they ar e entitled to the attorneys' fees and costs requested because they prevailed on the appeal within the meaning of 42 U.S.C. S 1983. See 42 U.S.C. S 1988(b) (providing, in the court's discretion, a reasonable attor ney's fee to a prevailing party to a S 1983 action). As we stated above, they also prevailed in the District Court where the trial judge, acting on a stipulation of counsel for the parties, enter ed an order on January 3, 2000, awarding plaintiffs $248,000 in full satisfaction of fees and costs incurred in that court. Regrettably, we have no stipulations in the motion before us; on the contrary, the appellants (effectively the State) strenuously oppose the motion in all of its aspects.

The State contends that the fees requested ar e "grossly unreasonable." It acknowledges that the appellees are entitled to receive a fee award, but asserts that the fee request is "grotesquely inflated." The State emphasizes that the appeal presented only a single issue which, although important, was not particularly complicated, and tur ned largely on the Court's construction of Shapiro v. Thompson, 394 U.S. 618 (1969). Specifically, the State ar gues that an award for the hours claimed for preparation of the brief at oral argument should be substantially r educed, and that the appeal's single issue, "which had alr eady been

3

thoroughly explored in the District Court," reasonably should have required no more than 100 hours. The State also contends that the hourly rate claimed for the attorneys is excessive and that the allowable hourly rate for all lawyers, including those of a private law fir m, should conform to the rates of Community Legal Services (CLS), which have been widely accepted as fairly reflecting the prevailing market rates in Philadelphia. The State asserts that attorneys of Dechert, Price & Rhoads pr ovided insufficient support for their high rates claimed.

On the other hand, the appellees assert that the issues on appeal "were complex and difficult," required familiarity with a large body of case law, state statutes and regulations, that the case was not "over –lawyered" by the plaintiffs, and that they have "alr eady substantially reduced their hours to account for any inefficiencies cr eated by a multi-firm team." They further assert that the time they spent on the appeal was reasonable, and that the State's lack of cooperation in the preparation of the appendix added to the expense. They also argue that the hourly rate claimed is reasonable and that the State should be ordered to pay Dechert "at its normal rates, which are set by the market."

II.

In assessing the reasonableness of a claimed fee in cases like this, we use the "lodestar" formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424 (1983); Pennsylvania v. Delaware V alley Citizens' Council for Clean Air, 478 U.S. 546 (1986); Pennsylvania Environ. Def., 152 F.3d at 232."When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." Delaware V alley Citizens' Council, 478 U.S. at 564 (internal quotation omitted).

In calculating the hours reasonably expended, a court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular

4

purposes described and then exclude those that are `excessive, redundant, or otherwise unnecessary.' " Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); see also Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The district court should exclude hours that are not reasonably expended."). "Hours that would not generally be billed to one's own client are not properly billed to an adversary." Public Interest Group, 51 F.3d at 1188. Thus, we have a positive and affirmative function in the fee fixing process, not merely a passive role.

Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. See Blum v. Stenson, 465 U.S. 886, 895 (1984); Dellarciprete, 892 F.2d at 1183. The court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Dellarciprete, 892 F.2d at 1183. The prevailing party "bears the burden of establishing by way of satisfactory evidence, `in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). The starting point in ascertaining a reasonable hourly rate "is the attorney's usual billing rate, but this is not dispositive." Public Interest Group, 51 F.3d at 1185.

In analyzing this heated controversy, some concepts and precepts are indisputable. The plaintiffs presented an excellent case and a high quality brief. Accordingly, they are entitled to all hours "reasonably expended on the litigation." West Virginia University Hospitals, Inc. v. Casey, 898 F.2d 357, 360 (3d Cir. 1990) (quoting Hershey v. Echerhart, 461 U.S. 424, 436 (1993). The converse is also true; they are not entitled to compensation for hours unreasonably expended on the litigation.

III.

We do not question the accuracy of counsel's records. Our principal concern is whether the time claimed is

reasonable for the services perfor med, a concern which is accentuated because of the many lawyers involved in behalf of the plaintiffs. Ordinarily, this appeal could have been briefed and argued by a single lawyer or two. Lawyers should understand that although the likelihood of success in a fee shifting case may be promising, the pr ospects of payment by a defendant with a deep pocket or a defendant with tax collecting powers should not encourage the utilization of an excess number of lawyers on the preparation of the appeal. Nor is work on the appeal intended to be a training school for law students or embryonic lawyers at the expense of the losing party. A reviewing court must adhere to the statutory and case law standards. As do the district courts, an appellate court also has a positive and affirmative function in the fee fixing process.

In analyzing the services rendered on this appeal, we divide them into categories: 1) research and briefing; 2) preparation of the supplemental appendix; 3) oral argument; and 4) communication and confer ences. We will determine a reasonable hourly rate and then review the fees claimed for preparing the fee petition.

1. Research and Briefing

The facts before this court on the underlying appeal comprised two short paragraphs. The single issue before us on the appeal, although significant, was framed in these words: "Whether Pennsylvania violates the Constitution by providing that, for one year after their arrival in Pennsylvania, applicants for certain welfare benefits may receive only the amount they would have r eceived in their state of prior residence." We, ther efore, noted that we were "only to determine the constitutionality of the state statute," and that we only had to address the propriety of the District Court's legal conclusion in granting the injunction.

In our analysis of the law on the right to travel, we stated in our written opinion, as did the District Court, that the seminal case on the subject of strict scrutiny of state durational residency requirements as prerequisite to eligibility for welfare benefits was Shapiro v. Thompson, 394

6

U.S. 618 (1969). We observed that the Court r eaffirmed this decision five years later in Memorial Hospital v. Maricopa County, 415 U.S. 250 (1974). The holdings in those cases have never been overturned, and were very well known to legal scholars and those practicing public service law. They were binding precedent upon us in deciding this case. We believed then, and we have no reason to change our opinion now, that this case was important and inter esting, but not complex. This in no way alters plaintif fs' right to a reasonable fee for their services, but it does not justify excessive claims. The immediate and difficult question is whether the hours claimed are reasonable for the services performed.

First, we note that the appellees' attorneys on appeal represented them in the District Court. Judge Newcomer had discussed the legal issue on appeal in a well-written and thorough opinion. See Maldonado v. Houstoun, 177 F.R.D. 311 (E. D. Pa. 1997). In his opinion, Judge Newcomer cited the District Court opinion in Roe v. Anderson, 166 F. Supp. 977 (E. D. Cal. 1997) enjoining the enforcement of a similar statute. The Supr eme Court later affirmed Anderson in Saenz v. Roe, supra. The District Court also discussed at length Shapiro  and its progeny. See Maldonado, 177 F.R.D. at 323-33 (1997).

Thus, much if not all of the pertinent law had been briefed and argued in the District Court, and the District Court opinion carefully and thoughtfully analyzed it. We are, therefore, stunned that over 550 hours are claimed for researching, briefing, conferring, pr eparing a supplemental appendix, and arguing the single constitutional issue before us.

The appellees noted in their brief to this court that the State "has explicitly limited its arguments on appeal to the class's likelihood of success on the merits" and has waived the issues pertaining to the other three factors necessary to the issuance of a preliminary injunction. In addition, the salient cases and statute on the single issue to be argued by the State were set forth by the District Court in its opinion. The court analyzed at length Shapir o v. Thompson and its progeny, and discussed the criticism of Shapiro in Attorney General of New York v. Soto-Lopez, 476 U.S. 898

7

(1986), Memorial Hospital v. Maricopa County, 415 U.S. 250 (1974), and a leading law review article by Thomas R. McCoy entitled "Recent Equal Protection Decisions -- Fundamental Right to Travel or `Newcomers' as a Suspect Class?" The District Court also discussed T odd Zubler's law review article on "The Right to Migrate and Welfare Reform: Time for Shapiro v. Thompson to Take a Hike."

Thus, the researching and briefing of the law on the single uncomplicated issue before this court did not require creating or developing an original theory or analyzing obscure principles of law. Moreover , the burden rested on the State, not the appellees, in framing the issue and preparing the appendix. Notwithstanding, appellees' counsel claim an enormous amount of time for r esearching and briefing an issue which they had successfully tried, researched, and briefed in the District Court.

True, the appellees prepared and submitted an excellent brief of 41 pages. The first 13 pages, however , essentially contain the appellee's statement of the issue, the counter-statement of the case, and a two-page summary of the argument. The remaining 28 pages contain the argument. Our arithmetic shows that the appellees claim an aggregate amount of 276.65 hours for research and briefing. Under the foregoing circumstances, we believe that a reasonable and generous amount of time for resear ch and briefing on the single issue, especially considering the r esearch and briefing in the District Court, and the pertinent law set forth in the District Court decision, is 120 hours.

2. Supplemental Appendix

Appellees claim 32.50 hours for the preparation of their appendix supplementing the State's appendix. Considering that the appellant had the burden of pr eparing and submitting the original appendix, we believe two nor mal work days should have been more than sufficient for the preparation of a supplemental appendix. W e will allow 16 hours for this purpose.

3. Oral Argument

Appellees claim 169.35 hours in preparation for a twenty minute oral argument. This is the equivalent of slightly

8

more than 21 full eight-hour days. Susan Frietsche, who made the oral argument for the appellees, individually claimed 77.3 hours in preparation for the oral argument and one hour in court for making the argument. Her colleagues in the case claimed an aggregate of 72.05 hours preparing for the oral argument to be made by Frietsche who, although at the Bar for only six years when she argued this case before the court, had achieved an impressive record at college, law school, and in public service litigation. A total of 169.35 hours in pr eparation for an oral argument on a single issue that had been tried, briefed, and argued in the District Court is unacceptable. 65.5 hours are claimed by Eliza Shapiro, and 15.25 hours by Sarah Moskowitz in preparation for oral ar gument. If a private client had agreed to pay for such services, so be it. But in fee shifting, there are standar ds to be maintained. See Norman v. Housing Auth. of Montgomery, 836 F.2d 1292 (11 Cir. 1988) (court should exclude hours that would be unreasonable to bill to a client, irrespective of counsel's experience, skill, or reputation).

A reasonable fee for hours spent preparing for a legal argument should be limited to hours reasonably necessary for a lawyer to become familiarized with the facts and the law pertaining to the issue to be argued, an analysis of the opponent's argument, and questions anticipated to be posed by the court. Under the fee shifting statute, the losing party is expected to pay for hours reasonably spent in the argument and its preparation, but not for excessive hours, or hours spent in learning or excessively rehearsing appellate advocacy. We believe 24 hours for preparation for this oral argument, and two hours for attendance at oral argument, is fair and reasonable.

4. Conferences and Communications

Appellees also request payment for over 40 hours spent on telephones, conference calls, and meetings to plan strategy, and payment for over 80 hours of miscellaneous time. There is considerable question whether many of these activities, communications and conference calls were necessary at all. For reasons evident in Part IV of our opinion, we will not tarry in our analysis of these claims

9

but will allow 40 hours as generous and r easonable for all these purposes.

5. Fee Petition

We also believe that the time claimed for the preparation of a simple six-page fee petition, largely supplemented by affidavits of several counsel, resumes, and time sheets, is excessive. Again we will not set forth our r easons therefor at this point but will resolve the matter in Part IV hereof.

6. Hourly Rate

The appellees have the burden of establishing a reasonable hourly rate for each of the attor neys. Each of the parties offer very little evidence pertaining thereto. The fee schedule established by Community Legal Services, Inc. ("CLS") "has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." See Rainey v. Philadelphia Housing Auth., 832 F. Supp. 127, 129 (E. D. Pa. 1993)(citing Swaayze v. Philadelphia Housing Auth., No. 91-2982, 1992 WL 81598, at N2 (E. D. Pa. Apr . 16, 1992)). The State has no objection to their use here. W e approve of those rates as reasonable in fixing the hourly rates in this case, and deny the hourly rates that are inconsistent with them.

IV.

In summary, we believe a reasonable number of hours for the services performed in behalf of the plaintiffs is as follows:

| Procedure | Hours |
|---|---|
| Research and briefing | 120 |
| Preparation of supplemental appendix | 16 |
| Preparation for oral argument | 24 |
| Attendance at oral argument | 2 |
| Telephone calls and conferences | 40 |
| Preparation for fee petition | 10 |
| Total reasonable hours | 212 hours |

In their Memorandum in Opposition to Appellees' Motion, the State used the CLS fee schedule to adjust appellees' hourly rates where appropriate. We hold that the rates set forth in the CLS schedule are reasonable for the services performed in this case.

The State's memorandum submits that a reasonable number of hours for the services perfor med in this appeal is an aggregate of 219.84 hours. Our independent analysis confirms that this figure is gener ous and not unreasonable. The State also has undertaken the difficult task of calculating the lodestar for each individual claimant; we deem their calculations to be reasonable and accurate. That calculation is as follows:

| ATTORNEY | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| McLaughlin | 15.25 | $250 | $3,812.50 |
| Nosowsky | 32.70 | $140 | $4,578.00 |
| Fitinides | 35.59 | $120 | $4,270.80 |
| Terry | 27.20 | $130 | $3,536.00 |
| Frietsche | 28.60 | $150 | $4,290.00 |
| Shapiro | 23.90 | $90 | $2,151.00 |
| Moskowitz | 0.00 | $60 | 0.00 |
| Weishaupt | 22.35 | $265 | $5,922.75 |
| Stein | 10.25 | $275 | $2,818.75 |
| Kreimer | 24.00 | $250 | $6,000.00 |
| TOTAL | 219.84 | | $37,379.80 |

The State has no objection to the claim for costs of $678.74 and we will allow it.

With respect to the fee petition, the State asserts that the hours claimed should reflect a reduction of 50% because of the limited success on the fee petition. We have held "that the fee reduction rationale of Hensley. . . applies by force of the Court's reasoning to fees generated in the litigation of a fee petition, and compels us to treat the fee petition litigation as a separate entity subject to lodestar and Hensley reduction analysis." Institutionalized Juveniles v. Secretary of Pub. Welfare, 758 F.2d 897, 924 (3d Cir. 1985); accord, Durette v. Cohen, 790 F.2d 360 (3d Cir. 1986); see also West Virginia University Hospitals, Inc., 898 F.2d at 367. We believe that this proposal is r easonable, and

11

applying the rates we have already held to be r easonable, we approve the following sums:

| | | | | | |
|---|---|---|---|---|---|
| McLaughlin | 0.35 hours | x $250 | = $ | 87.50 |
| Fitinides | 5.85 hours | x $120 | = $ | 702.00 |
| Frietsche | 1.4 hours | x $150 | = $ | 210.00 |
| Shapiro | 0.4 hours | x $90 | = $ | 36.00 |
| Weishaupt | 4.45 hours | x $265 | = $ | 1179.25 |
| Kreimer | 0.25 hours | x $250 | = $ | 62.50 |
| TOTAL | 12.7 hours | | | $2277.28 |

V.

Accordingly, we hold that the lodestar pr oposed by the State is reasonable and award $37,379.80 as attorneys' fees for the work performed on appeal. W e will award $2277.28 for preparation of the fee petition. W e will award the full amount of costs claimed, $678.74; this amount is reasonable and uncontested. The State is dir ected to pay the same to individual counsel in the sums set forth above.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

12