**Brenda ROE and Anna Doe, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,**

v.

**Eloise ANDERSON, Director of the California Department of Social Services; California Department of Social Services; Pete Wilson, Governor of the State of California; Craig Brown, Director of the California Department of Finance, Defendants–Appellants.**

No. 97–16326.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1997.

Decided Jan. 28, 1998.

Theodore Garelis, Deputy Attorney General, Sacramento, California, for defendants–appellants.

Mark Rosenbaum and David Schwartz, ACLU of Southern California, Martha Davis, NOW Legal Defense & Education Fund, Clare Pastore, Western Center on Law & Poverty, Inc., for plaintiffs–appellees.

Before: FLETCHER and T.G. NELSON, Circuit Judges, and WHALEY,* District Judge.

FLETCHER, Circuit Judge:

The State of California appeals the grant of a preliminary injunction to Brenda Roe, Anna Doe, and a certified class of all others similarly situated, who brought an equal protection claim under 42 U.S.C. § 1983 to prevent California from implementing Welfare and Institutions Code § 11450.03. That statute limits benefits to new residents in California for their first year of residency to the amount that they received under the Aid to Families with Dependent Children (AFDC) program in their state of prior residence. We affirm.

I.

■■ We review on appeal the grant of a preliminary injunction. We have repeatedly instructed that

* Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

to obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir.1992) (citations and internal quotation marks omitted). The grant of a preliminary injunction is reviewed for abuse of discretion,[1] and that discretion is abused where the district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).

■ Thus, we review only the district court's consideration of the likelihood of success on the merits at one end of the scale, and the possibility of irreparable harm at the other end of the scale. We do not decide the merits. *See L.A. Mem'l Coliseum Comm'n v. National Football League*, 634 F.2d 1197,

1198 (9th Cir.1980) (declining to reach the merits on review of the grant of preliminary injunction although "strenuously urged by the parties").

### A.

While neither party suggests that the district court applied the wrong preliminary injunction standard, California argues on appeal that the district court misapprehended the law with respect to the underlying issues of equal protection and the fundamental right to travel. As a result, California argues that the district court erred in its determination of plaintiffs' probability of success on the merits.

### 1.

Section 11450.03 of the California Welfare and Institutions Code, enacted in 1992, provides that "families that have resided in this state for less than 12 months" and who qualify for welfare shall receive benefits no greater than the "maximum aid payment that would have been received by that family from the state of prior residence."[2] Under

---

1. A district court's order regarding preliminary injunctive relief is subject only to "limited review." The grant or denial of a preliminary injunction will be reversed "only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Does 1–5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir.1996) (citing *Miller v. California Pac. Med. Ctr.*, 19 F.3d 449, 455 (9th Cir.1994) (en banc)).

   Although we have previously suggested that issues of law underlying the district court's decision on the preliminary injunction are reviewed de novo, *Metro Publishing, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir.1993), the Supreme Court has expressly rejected any multi-tiered standard of review for abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990) (Rule 11). "Rather, an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.*

   This single-tier formulation of the abuse of discretion standard of review has been subsequently adopted in numerous other contexts. *See, e.g., Koon v. United States*, 518 U.S. 81,

——–——, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392 (1996) (sentencing guidelines); *Schlup v. Delo*, 513 U.S. 298, 333, 115 S.Ct. 851, 870, 130 L.Ed.2d 808 (1995) (fundamental miscarriage of justice exception in capital habeas) (O'Connor, J., concurring); *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir.1997) (expert testimony); *Osorio v. INS*, 99 F.3d 928, 932 (9th Cir.1996) (grant of asylum); *Flores v. Shalala*, 49 F.3d 562, 567 (9th Cir.1995) (attorney's fees); *Stock West Corp. v. Taylor*, 964 F.2d 912, 918 (9th Cir.1992) (comity and abstention in determining tribal court jurisdiction).

2. Section 11450.03 states in full:

   (a) Notwithstanding the maximum aid payments specified in paragraph (1) of subdivision (a) of Section 11450, families that have resided in this state for less than 12 months shall be paid an amount calculated in accordance with paragraph (1) of subdivision (a) of Section 11450, not to exceed the maximum aid payment that would have been received by that family from the state of prior residence.
   (b) This section shall not become operative until the date of approval by the United States Secretary of Health and Human Services necessary to implement the provisions of this section so as to ensure the continued compliance of the state plan for the following:

this provision, new California residents from lower-benefits states would receive that lower level of benefits throughout the first year of their residency in California.

California first sought to implement this durational residency requirement in 1992, pursuant to the grant of relevant waivers by the Secretary of Health and Human Services. However, the district court judge, the same judge that presided in the instant case, granted a preliminary injunction at that time against implementation of § 11450.03 after determining that the distinction among California residents based on the duration of their residency was unconstitutional. The district court relied on a line of Supreme Court cases addressing durational residency provisions in a variety of contexts. *See Green v. Anderson,* 811 F.Supp. 516, 518–23 (E.D.Cal.1993), *aff'd,* 26 F.3d 95 (9th Cir. 1994), *vacated as unripe,* 513 U.S. 557, 115 S.Ct. 1059, 130 L.Ed.2d 1050 (1995).[3]

Brenda Roe and Anna Doe, different plaintiffs than those in *Green v. Anderson,* commenced the instant action on April 1, 1997, each having recently moved to California seeking employment and being eligible for assistance. They argued that, due to the higher cost of living in California, the relatively lower level of assistance established by § 11450.03 threatened them with imminent deprivation of the basic necessities of life. That same day, the district court entered a temporary restraining order enjoining implementation of § 11450.03, pending a hearing on plaintiffs' request for a preliminary injunction, and granting plaintiffs' motion to proceed under fictitious names. On April 23, 1997, on the stipulation of the parties, the district court permitted the instant action to be maintained as a class action.[4]

Finding that the plaintiffs demonstrated the possibility of irreparable harm and that California would not be unduly harmed, the district court on June 4, 1997, granted the preliminary injunction, citing its prior reasoning in *Green v. Anderson* regarding the probability of success on the merits. *Roe v. Anderson,* 966 F.Supp. 977 (E.D.Cal.1997).

---

(1) Title IV of the federal Social Security Act (Subchapter 4 (commencing with Section 601) of Chapter 7 of Title 42 of the United States Code).
(2) Title IX of the federal Social Security Act (Subchapter 19 (commencing with Section 1396) of Chapter 7 of Title 42 of the United States Code). (added by Stats.1992, c. 722 (S.B.485), § 37.5, eff. Sept. 15, 1992).

3. The Supreme Court, after granting *certiorari,* vacated as unripe the district court's decision (summarily affirmed by this court) granting the preliminary injunction against implementation of § 11450.03 due to intervening litigation that struck the necessary grant of waivers from the Secretary of Health and Human Services. *See Beno v. Shalala,* 30 F.3d 1057, 1076 (9th Cir. 1994). Because § 11450.03, by its own terms, was no longer applicable, the Supreme Court determined that "[t]he parties have no live dispute now, and whether one will arise in the future is conjectural." *Anderson v. Green,* 513 U.S. 557, 559, 115 S.Ct. 1059, 1060, 130 L.Ed.2d 1050 (1995). As a result, the Court decided that "[v]acatur is appropriate, therefore, to 'clea[r] the path for future relitigation of the issues between the parties and [to] eliminat[e] a judgment, review of which was prevented through happenstance.'" *Id.* at 560, 115 S.Ct. at 1061 (citation omitted).

In February 1996, the Secretary again granted waivers for most of California's welfare program, but expressly withheld the waiver that would

have permitted California to implement the residency requirement. Nevertheless, in August 1996, Congress enacted a new federal welfare law, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), 42 U.S.C. §§ 601, et seq., that specifically authorized the states to apply a durational residency requirement of the type found in § 11450.03 to those who have "resided in the State for less than twelve months" without additional waivers. The PRWORA superceded the AFDC program with a new program entitled Temporary Assistance to Need Families ("TANF") that significantly increased the states' discretion to design their federally supported welfare plans without seeking waivers from the Secretary. *See* 42 U.S.C. § 604(c).

In October 1996, California submitted its welfare plan to the Department of Health and Human Services, including a durational residency limitation consistent with § 604(c). On February 28, 1997, in All–County Letter 97–11, the California Department of Social Services instructed the counties to implement § 11450.03 as of April 1, 1997.

4. The district court certified the class of plaintiffs defined as "all present and future AFDC and TANF applicants and recipients who have applied or will apply for AFDC or TANF benefits on or after April 1, 1997, and who will be denied full benefits because they have not resided in California for twelve consecutive months immediately preceding their application for aid."

### 2.

■ In granting the preliminary injunction in the instant case, the district court adopted by reference its prior discussion in *Green v. Anderson* of the Supreme Court's cases regarding the right of migration and equal protection, in which the Court set aside as unconstitutional distinctions drawn among residents of a state-all of whom are bona fide residents-based on the incipiency or duration of their residency.

■ California challenges the district court's reliance on its earlier decision in *Green*. Although the decision in *Green* was summarily affirmed by this court, *see* 26 F.3d 95, 96 (9th Cir.1994), that judgment is not binding precedent because the Supreme Court ultimately vacated it as unripe. *See Anderson v. Green*, 513 U.S. 557, 559–60, 115 S.Ct. 1059, 1060–61, 130 L.Ed.2d 1050 (1995). California further suggests that the analysis in *Green* is outdated because of the subsequent enactment of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), 42 U.S.C. §§ 601 et seq., which authorizes durational residency requirements as part of a broad-based federal legislative welfare reform effort.

■ However, our prior affirmance of the district court's decision in *Green* remains viable as persuasive authority, notwithstanding the Supreme Court's vacatur. *See In re Taffi*, 68 F.3d 306, 310 (9th Cir.1995) (following as persuasive authority a decision vacated by the Supreme Court on other grounds); *Orhorhaghe v. INS*, 38 F.3d 488, 493 n. 4 (9th Cir.1994) (following as persuasive authority a decision vacated by the Supreme Court as moot). Moreover, the passage of the PRWORA does not affect the constitutional analysis of § 11450.03 because, as the Supreme Court has explained, "Congress may not authorize the States to violate the Equal Protection Clause." *Shapiro v. Thompson*, 394 U.S. 618, 641, 89 S.Ct. 1322, 1335, 22 L.Ed.2d 600 (1969).

### 3.

■ In finding that Roe and Doe had demonstrated a probability of success on the merits, the district court determined that the apparent purpose of § 11450.03 was to deter migration of poor people to California. The district court noted in *Green* that California's "two-tier system" for AFDC benefits implicates the constitutional right to freedom of travel or migration,[5] which "'protects not only physical movement, and forbids direct restraints on interstate migration, but also protects residents of a State from being disadvantaged, or from being treated differently, simply because of the timing of their migration, from other similarly situated residents.'" *Green*, 811 F.Supp. at 518 (quoting *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 905, 106 S.Ct. 2317, 2322, 90 L.Ed.2d 899 (1986)). At oral argument before this court, in response to the suggestion that the purpose of § 11450.03 is to keep poor people out of the state, the state conceded that it does not want people to move to California "with a mind-set of economic dependency."

We are thus satisfied, based upon the persuasive authority of our prior affirmance in *Green v. Anderson* and the apparent purpose of § 11450.03, that the district court did not err in its determination that Roe and Doe demonstrated a probability of success on the merits.

### B.

■ "Numerous cases have held that reductions in AFDC benefits, even reductions of a relatively small magnitude, impose irreparable harm on recipient families." *Beno v. Shalala*, 30 F.3d 1057, 1063–64 n. 10 (9th Cir.1994) (string cite). The district court specifically found that the two "named" plaintiffs demonstrated that they faced the possibility of irreparable harm if the injunction were not issued because they both "have been unable to locate housing in California that they could afford on the reduced grant. Others within the class may face lower bene-

---

**5.** While acknowledging that "the right to travel is not protected by explicit provision in the Constitution," the district court noted that "the Supreme Court repeatedly has held that such a right inheres in the concept of a union." 811 F.Supp. at 518; *see also id.* at 518 n. 7 (string cite).

fit levels depending on the state of prior residence." 966 F.Supp. at 985.

Nevertheless, California argues that, because the AFDC grant for new California residents "remains the same as it was in their state of prior residence ... they suffer no harm cognizable by this Court." As such, California suggests that the proper comparison is between the "position of newcomers before and after travel to California," rather than between "recent arrivals" and "longer-term California residents."

However, as noted by the district court, in case after case the Supreme Court has determined that the appropriate comparison is between the treatment of recent residents of California and other residents of California and not a comparison of recent residents of California to residents of other states. *See Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 904, 106 S.Ct. 2317, 2322, 90 L.Ed.2d 899 (1986) (holding that the State may not treat new residents differently, "because of the timing of their migration, from other similarly situated residents"); *Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 623, 105 S.Ct. 2862, 2868, 86 L.Ed.2d 487 (1985) ("The State may not favor established residents over new residents."); *Zobel v. Williams,* 457 U.S. 55, 58–59, 102 S.Ct. 2309, 2311–12, 72 L.Ed.2d 672 (1982) (comparing positions of new and older Alaska residents in receiving a bounty from oil revenues). The district court did not err in finding that plaintiffs faced the possibility of irreparable harm. California does not argue on appeal that it would be unduly harmed by the preliminary injunction.

## II.

■ Balancing the probability of success on the merits with the possibility of irreparable harm, we hold that the district court did not abuse its discretion in granting the preliminary injunction. Our prior affirmance in *Green* remains persuasive as to the probability of success on the merits, and as to the possibility that irreparable harm falls on the class Roe and Doe represent, but not on California.

An appeal from the grant or denial of a permanent, rather than preliminary, injunction would entitle the parties to a full review on the merits. We reject California's invitation to engage in such a review of this case in its current posture, before the district court has had a chance to address the underlying merits upon a fully developed record.

AFFIRMED.