379 F.3d 1029
 Kevin COOPER, Plaintiff-Appellant,
v.
Richard A. RIMMER, Acting Director of the California Department of Corrections; Jeanne Woodford, Warden, San Quentin State Prison, San Quentin, California, Defendants-Appellees.
 No. 04-99001.
 United States Court of Appeals, Ninth Circuit.
 Submitted February 8, 2004.*
 Filed February 8, 2004.
 Amended August 12, 2004.
 
 David T. Alexander, George A. Yuhas, and Lisa Marie Schull, Orrick, Herrington, & Sutcliffe LLP, San Francisco, CA, for the plaintiff-appellant.
 Holly D. Wilkens, Deputy Attorney General, San Diego, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California Jeremy D. Fogel, District Judge, Presiding. D.C. No. CV-04-00436-JF.
 Before: BROWNING, RYMER, and GOULD, Circuit Judges.
 ORDER
 The opinion filed February 8, 2004, 358 F.3d 655, is amended to include Judge Browning's concurrence.
 OPINION
 PER CURIAM:
 
 
 1
 Kevin Cooper, a California death row inmate whose execution is scheduled for Tuesday, February 10, 2004 at 12:01 a.m., appeals the district court's order denying his motions for temporary restraining order and preliminary injunction, and for expedited discovery, in his action pursuant to 42 U.S.C. § 1983 against Richard A. Rimmer, Acting Director of the California Department of Corrections, and Jeanne S. Woodford, Warden of California State Prison at San Quentin (collectively, Woodford). Cooper's action seeks to prevent Woodford from executing him in accordance with California's lethal injection protocol in violation of his Eighth Amendment right to be free from cruel and unusual punishment. He also makes an emergency motion to stay the execution date. We affirm the district court, and deny the motion.
 
 
 2
 * Cooper filed this action on February 2, 2004. The district court held a hearing on February 5, and rendered its decision February 6. The court found that Cooper had brought his challenge at the eleventh hour. It noted that the Supreme Court stated in Gomez v. United States District Court for the Northern District of California, 503 U.S. 653, 653-54, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992), that a court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief, and was guided by the Court's treatment of similar last-minute challenges in recent weeks. See, e.g., Vickers v. Johnson, ___ U.S. ___, 124 S.Ct. 1196, 157 L.Ed.2d 1224, 2004 WL 168080 (U.S. Jan.28, 2004) (stay of execution denied); Zimmerman v. Johnson, ___ U.S. ___, 124 S.Ct. 1168, 157 L.Ed.2d 1059, 2004 WL 97434 (U.S. Jan.21, 2004) (same); Beck v. Rowsey, ___ U.S. ___, 124 S.Ct. 980, 157 L.Ed.2d 811 (Jan. 8, 2004) (stay of execution vacated). Absent a compelling justification for doing so (such as a material change in the law or factual circumstances or an exceptionally strong showing on the merits), the district court indicated that it should follow the Supreme Court's guidance. The court also observed that even though Cooper's action has the avowed purpose of addressing alleged deficiencies in the lethal injection protocol, the timing of Cooper's action suggests that an equally important purpose is to stay his execution to continue to pursue other claims.
 
 
 3
 On the merits, and apart from delay, the court found that Cooper had not met his burden of demonstrating either the likelihood of success on the merits or the existence of serious questions going to the merits. The court noted that every state and federal court to consider the question has concluded that lethal injection is constitutional, and that at least two courts which have examined protocols that, like California's, use both sodium pentothal and pancuronium bromide have held that such protocols are constitutional. Further, the court found that Cooper had not articulated a compelling argument that to stop an inmate's breathing is not a legitimate state interest in the context of an execution. Finally, the court held that Cooper's argument that the California protocol is unconstitutionally vague presents no serious question. As it summarized Cooper's position, he "has done no more than raise the possibility that California's lethal-injection protocol risks an unconstitutional level of pain and suffering." Accordingly, the court found and concluded that Cooper has not met the standard for enjoining California's use of lethal injection, and has unduly delayed in asserting his claims. Thus, it denied the injunctive relief requested.
 
 II
 
 4
 The parties dispute whether Cooper's challenge to the California protocol may properly be brought as a § 1983 action, or should instead be recharacterized as an application to file a second or successive petition under 28 U.S.C. § 2244(b). We need not decide this, however, because regardless of its procedural posture the challenge fails for reasons stated by the district court.
 
 III
 
 5
 Lethal injection has been an authorized method of execution in California since 1992, and the presumptive method since 1996. Cal.Penal Code § 3604, amended by Stats.1992, c. 558 (A.B.2405) § 2, amended by Stats.1996, c. 84 (A.B.2082) § 1. Eight inmates have been executed by that method. Like other states, California uses a combination of three chemicals to carry out an execution by lethal injection: sodium pentothal, a barbiturate sedative; pancuronium bromide, a neuromuscular blocking agent; and potassium chloride, which stops the heart. Cal.Penal Code § 3604. Cooper points to a number of alleged deficiencies in California's protocol, including that use of pancuronium bromide serves only to mask what intense suffering could be experienced in combination with the other chemicals that are used, that the combination of chemicals can fail to work properly, that differences in physical characteristics can affect how successfully the system performs, that administering a single five gram dose of pentothal as compared with a continuous intravenous drip creates the risk that the barbiturate will not preserve unconsciousness long enough, and that the personnel California uses are not adequately trained in executing the protocol. He contends that it is impermissible for many veterinarians to use this combination of chemicals to euthanize animals, and he submitted declarations by Dr. Corey Weinstein, a doctor in private practice who is a medical consultant to prisoner organizations, describing possible complications and executions by lethal injection in California and elsewhere that appeared to be flawed,[1] and by Dr. Mark Heath, an Assistant Professor of Clinical Anesthesiology at Columbia University, describing the effects of pancuronium bromide.
 
 
 6
 Woodford countered with a declaration from its experts indicating that a condemned inmate who is administered five grams of thiopental sodium will be rendered unconscious, and not experience pain for the time period necessary to complete the execution. Specifically, Dr. Dershwitz, a board-certified anesthesiologist on the faculty at the University of Massachusetts, states that over 99.999999999999% of the population would be unconscious within sixty seconds from the start of administration of this dosage of thiopental sodium. He also declares that this dose will cause virtually all persons to stop breathing within a minute of drug administration. Therefore, he opines, although the subsequent administration of pancuronium bromide would have the effect of paralyzing the person and preventing him from being able to breathe, virtually every person given five grams of thiopental sodium will have stopped breathing prior to that.
 
 
 7
 The district court applied the proper standard for deciding whether injunctive relief should be granted, see Martin v. Int'l Olympic Comm., 740 F.2d 670, 674-75 (9th Cir.1984), and for determining whether the method of execution infringes the protections of the Eighth Amendment. The Eighth Amendment prohibits punishments that involve the unnecessary and wanton inflictions of pain, or that are inconsistent with evolving standards of decency that mark the progress of a maturing society. Estelle v. Gamble, 429 U.S. 97, 102-03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Furman v. Georgia, 408 U.S. 238, 269-70, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, Stevens, JJ.). The district court recognized that punishments are cruel when they involve torture or a lingering death. In re Kemmler, 136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519 (1890). It also properly weighed undue delay in the balance of equities.[2] Gomez, 503 U.S. at 654, 112 S.Ct. 1652 ("This claim [challenging execution by lethal gas] could have been brought more than a decade ago. There is no good reason for this abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process.").
 
 
 8
 We have previously upheld the constitutionality of lethal injection as a method of execution. LaGrand v. Stewart, 133 F.3d 1253, 1265 (9th Cir.1998); Poland v. Stewart, 117 F.3d 1094, 1104-05 (9th Cir.1997). Both involved executions by lethal injection in Arizona, but Cooper makes no case that there are material differences in California's process. He does argue that witnesses have perceived problems in California executions, but the possibility of unnecessary pain and suffering is purely speculative. See Campbell v. Wood, 18 F.3d 662, 682 (9th Cir.1994) (en banc) ("The risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review.").
 
 
 9
 Execution by lethal injection is now used by 37 of the 38 states with the death penalty,[3] objectively indicating a national consensus. Gregg, 428 U.S. at 173, 96 S.Ct. 2909 (opinion of Stewart, Powell, Stevens, JJ); see Stanford v. Kentucky, 492 U.S. 361, 367-70, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989). Challenges to lethal injection have also been rejected by the courts of at least two states that have similar protocols but call for a lesser dosage of anesthesia than California's. See State v. Webb, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S.Ct. 93, 148 L.Ed.2d 53 (2000); Sims v. State, 754 So.2d 657 (Fla.), cert. denied, 528 U.S. 1183, 120 S.Ct. 1233, 145 L.Ed.2d 1122 (2000).
 
 
 10
 Cooper argues that the debate is not as seen by the district court, over whether sodium pentothal in a 5 gram dose will cause unconsciousness; instead, it is whether the protocol sufficiently assures that this will occur and that the drug will have its intended effect. However, the district court's findings are well-supported in the record. While there can be no guarantee that error will not occur, Cooper falls short of showing that he is subject to an unnecessary risk of unconstitutional pain or suffering such that his execution by lethal injection under California's protocol must be restrained.
 
 
 11
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2)
 
 
 [1]
 Cooper additionally notes the possibility that California will use a "cut-down" surgical procedure if it cannot find a vein sufficient to administer the chemicals, but does not dispute Woodford's evidence that medical examinations have shown his veins are sufficient
 
 
 [2]
 Cooper was aware of the potential for a claim of the sort made in this action when he filed his first federal habeas petition in 1994 (amended in 1996 and supplemented in 1996), for in that petition he claimed that he was deprived of the right to select the method of execution as lethal gas had just been enjoined by a federal district court inFierro v. Gomez, 790 F.Supp. 966 (N.D.Cal.1992).
 
 
 [3]
 Alabama, Ala.Code 1975 § 15-18-82; Arizona, Ariz.Rev.Stat. Ann. § 13-704; Arkansas, Ark.Code Ann. § 5-4-617; California, Cal.Penal Code § 3604; Colorado, Colo.Rev.Stat. Ann. § 18-1.3-102; Connecticut, Conn. Gen.Stat. § 54-100; Delaware, Del.Code Ann. tit. 11, § 4209(f); Florida, Fla. Stat. Ann. § 922.105; Georgia, Ga.Code Ann., § 17-10-38; Idaho, Idaho Code § 19-2716; Illinois, 725 Ill. Comp. Stat. Ann. 5/119-5(a)(1); Indiana, Ind.Code Ann. § 35-38-6-1; Kansas, Kan. Stat. Ann. § 22-4001; Kentucky, Ky.Rev.Stat. Ann. § 431.220; Louisiana, La.Rev.Stat. Ann. § 15:569 B; Maryland, Md.Code Ann., Corr. Servs. § 3-905; Mississippi, Miss.Code Ann. 99-19-51; Missouri, Mo.Rev.Stat. § 546.720; Montana, Mont.Code Ann. § 46-19-103; Nevada, Nev.Rev.Stat. § 176.355 1; New Hampshire, N.H.Rev.Stat. Ann. § 630:5 XIII.; New Jersey, N.J. Stat. Ann. § 2C:49-2; New Mexico, N.M. Stat. Ann. § 31-14-11; New York, N.Y. Correct. Law § 658; North Carolina, N.C. Gen.Stat. § 15-187; Ohio, Ohio Rev.Code Ann. § 2949.22; Oklahoma, Okla. Stat. Ann. tit. 22, § 1014; Oregon, Or.Rev.Stat. § 137.473,amended by 2003 Or. Laws 103; Pennsylvania, Pa. Stat. Ann. tit. 61, § 3004; South Carolina, S.C.Code Ann. 24-3-530; South Dakota, S.D. Codified Laws § 23A-27A-32; Tennessee, Tenn.Code Ann. § 40-23-114; Texas, Texas Crim. Proc.Code Ann. § 43.14; Utah, Utah Code Ann. § 77-18-5.5; Virginia, Va.Code Ann. § 53.1-233; Washington, Wash. Rev.Code Ann. § 10.95.180; and Wyoming, Wyo. Stat. Ann. § 7-13-904.
 
 
 BROWNING, Circuit Judge, concurring:
 
 12
 Appellate review of the grant or denial of preliminary injunctive relief requires consideration of the merits of the underlying issue, but it does not decide them. Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir.1998); Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir.2003) (en banc). To obtain such relief, "the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor." Roe, 134 F.3d at 1402 (internal quotation marks omitted). We review for abuse of discretion the district court's decision to grant or deny a preliminary injunction or temporary restraining order. Id. "Our review is limited and deferential." Southwest Voter, 344 F.3d at 918. We determine only whether "the district court employed the appropriate legal standards governing the issuance of a preliminary injunction, and correctly apprehended the law with respect to the issues underlying the litigation." Cal. Prolife Council Political Action Comm. v. Scully, 164 F.3d 1189, 1190 (9th Cir.1999).
 
 
 13
 Here, the district court relied on the correct standards for both issuance of a preliminary injunction and the underlying constitutional issue. We determine only that the district court did not abuse its discretion in applying the law to the factual record before it. Our decision under this standard of review does not necessarily reflect our independent view of the evidence, for we are "not empowered to substitute[our] judgment" for the district court's. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); accord Sports Form, Inc. v. United Press Int'l, Inc., 686 F.2d 750, 752 (9th Cir.1982). If the district court's decision relied on the correct law, its grant or denial of preliminary injunctive relief "will not be reversed simply because the appellate court would have arrived at a different result had it applied the law to the facts of the case. Rather, the appellate court will reverse only if the district court abused its discretion." Sports Form, 686 F.2d at 752.
 
 
 14
 Our review of the district court's merits decision — if it is appealed — will be more rigorous. Applying a de novo standard of review, we will assess for ourselves whether "the evolving standards of decency that mark the progress of a maturing society," Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), require lethal injection procedures different from those California currently employs. See Campbell v. Wood, 18 F.3d 662, 681-82 (9th Cir.1994) (en banc). Our decision may not reach the same conclusion as today's, "[b]ecause of the limited scope of our [current] review of the law applied by the district court and because the fully developed factual record may be materially different from that initially before the district court...." Sports Form, 686 F.2d at 753. Neither the district court nor the parties should read today's decision as more than a preliminary assessment of the merits.